**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**BRACKEN CONSTRUCTION COMPANY, INC.,
BRACKEN EQUIPMENT, LLC, and
COLONY SPECIALTY INSURANCE COMPANY,**
*as Subrogee of Bracken Construction Co., Inc.*
*and Bracken Equipment, LLC*                                    **PLAINTIFFS**

**v.**                                    **CIVIL ACTION NO. 3:24-cv-00180-HTW-LGI**

**LIEBHERR-AMERICA, INC.**                                    **DEFENDANT**

**ORDER**

This matter is before the Court on Defendant *Liebherr-American, Inc.'s Motion to Transfer Venue* [10]. Plaintiffs file a Response in Opposition [13], and Defendant files a Rebuttal [15]. The Court, having considered the submissions, the record and relevant law, finds that Defendant Liebherr's Motion to Transfer Venue is DENIED, as discussed below.

**I.    Relevant Facts and Procedural History**

On July 8, 2019, Bracken Equipment, LLC, a Mississippi company, purchased two cranes from Barnard Equipment Company ("Barnard"), in Brandon, Mississippi. Complaint, Doc. [1-1] at 3. Barnard, an independent broker, had purchased the cranes from Liebherr-America, Inc. ("Liebherr") on April 2, 2019. Doc. [10] at 1. The instant lawsuit involves one of the cranes. Bracken Equipment, LLC had the subject crane repaired by Liebherr on three separate occasions – August 20, 2021, September 21, 2021, and December 22, 2021. Complaint [1-1] at 3-4. On February 6, 2023, the subject crane caught fire while it was being driven from a jobsite in Vicksburg, Mississippi to Flowood, Mississippi. *Id.* at 3. The fire consumed the crane, resulting in a total loss. *Id.*

1

In its Complaint, Bracken Equipment, LLC claims certain changes made to the engine compartment hoses during one of the repairs caused the fire and the resulting damage to the crane. *Id.* at 3-5. Plaintiff asserts Liebherr was the only company that repaired and/or performed maintenance on the crane. *Id.* at 5. After the fire, Bracken Equipment, LLC filed claims under its insurance policy with Colony Specialty Insurance Company ("Colony"), seeking reimbursement for the total loss of the crane. *Id.* at 6. Colony paid $2,005,236.00 on behalf of Bracken and is a subrogee in this action against Defendant. *Id.*

On January 18, 2024, Bracken Construction Company, Inc., Bracken Equipment, LLC, Bracken Equipment, LLC (collectively "Bracken") and Colony filed suit against Liebherr, a Virginia corporation, and against Barnard, a Mississippi Corporation, in the Circuit Court of Rankin County, alleging strict liability, breach of warranty, and negligent repair and seeking an award of damages. *Id.* at 1. On March 18, 2024, the Circuit Court Judge entered an Order of Dismissal with prejudice, dismissing Barnard from the state court action. *See* Notice of Removal, Doc. [1] at 2; *see also* Circuit Court's Order of Dismissal, with prejudice, as to Defendant Barnard, Doc. [1-1] at 87.[1] The state court case proceeded against Defendant Liebherr only. On March 28, 2024, Defendant Liebherr removed this case to federal court based on diversity jurisdiction. Doc. [1].

On May 29, 2024, Liebherr filed the instant Motion to Transfer Venue [10]. Upon review, the Court directed the parties to submit letter briefs as to their positions on whether discovery should be stayed pending ruling on the Motion. *See* Text-only Order, dated 05/29/2024. Following

---

[1] According to Defendant Liebherr, Barnard moved for dismissal, "arguing in part, that Plaintiffs joined Barnard as a defendant merely for the purpose of defeating diversity jurisdiction under 28 U.S.C. § 1332." *Id.*; *see also* Barnard's Motion to Dismiss, Doc. [1-1] at 69. Notably, the Circuit Court's order, which was agreed to by Bracken, Colony, and Barnard, provides "[Plaintiffs] have no objection to the dismissal of Barnard Equipment Company from this cause, [the Court] finds the Motion to Dismiss is well taken and should be granted." *Id.* at 87-88.

2

consideration of the parties' submissions, the Court stayed the case, pending resolution of the instant Motion. *See* Order [12]. On June 12, 2024, Plaintiff filed a Response in Opposition [13], and Defendant filed its Rebuttal [15] in support of its initial Motion, on June 19, 2024. The Motion [10] is now ripe for review.

**II.    Standard**

A motion to transfer venue involves a non-dispositive pretrial matter, which a magistrate judge may determine pursuant to 28 U.S.C. § 636(b)(1)(A). *Smith v. Carl Zeiss SMT, Inc.*, No. CIV.A. 1:05CV570WJGJ, 2007 WL 686874, at *1 (S.D. Miss. Mar. 5, 2007). *See, e.g. Harris v. Edward Hyman Co.,* 664 F.2d 943, 945 n. 7 (5th Cir.1981) (citation omitted).

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Whether to transfer venue under § 1404(a) is within the trial court's sound discretion." *Mohamed v. Mazda Corp.,* 90 F.Supp.2d 757, 768 (E.D.Tex.2001). The court must first determine whether the claim could have been filed in the judicial district to which transfer is sought. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004). Next, the court must examine the "convenience of the parties and witnesses" which requires consideration of several private and public interest factors. *Id.*

The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of the compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the trial easy, expeditious, and inexpensive. *Id.* The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary

conflict of law problems involving the application of foreign law. *Id.* A court must consider these factors in light of all the claims alleged in the case and must not restrict its analysis to only the plaintiff's claims. *In re Volkswagen AG,* 371 F.3d at 204. Additionally, the court must consider the plaintiff's choice of forum, but the plaintiff's forum choice itself is not conclusive or determinative. *In re Horseshoe Entm't,* 337 F.3d 429, 434 (5th Cir.2003).

### A. <u>Argument</u>

Liebherr files this Motion, arguing that a forum-selection clause in the sales contract for the crane demands that this case be transferred to the Newport News Division of the U.S. District Court for the Eastern District of Virginia. Doc. [10] at 4; [11] at 4. Defendant points to a sales contract between Liebherr, as seller,[2] and Barnard, as independent broker/first purchaser, which it refers to as the "Agreement." *Id.* at 1-2. According to Defendant, under the Terms and Conditions and the Standard Warranty contained in the Agreement, both a forum-selection clause and a choice-of-law clause requires a buyer to bring all disputes in Virginia. *Id.* at 2. Defendant cites to the following excerpts from the subject Agreement,

> **11. Applicable Law**. This agreement shall be deemed to have been entered into in the Commonwealth of Virginia, and all questions concerning the validity, interpretation or performance of any of its terms or provisions, or of any rights or obligations of the parties hereto, shall be governed by and resolved in accordance with the laws of the Commonwealth of Virginia, without reference to its choice of law rules or to the laws of any other jurisdiction . . . .
>
> **12. Exclusive Jurisdiction**. Except as provided in clauses (a) and (b) below, with respect to *any* dispute, claim or controversy arising under, out of, in connection with or relating to this Agreement or the Equipment, or any course of conduct, course of dealing, statements (oral or written), or actions of Seller or Buyer relating to this Agreement, or the Equipment, Buyer agrees that *any* action at law, suit in equity or other judicial proceeding for the enforcement of this Agreement or any provision thereof *shall be instituted only in* the United States federal or states courts located within in the Commonwealth of Virginia . . . .

---

[2] Notably, the Agreement contains many references to Liebherr-Werk Ehingen GmbH ("Manufacturer"). Doc. [10-1] at 3-9.

4

Doc. [11] at 2, *see also* Agreement, titled "Liebherr New Equipment Sales Acknowledgment 1000-2190001926," Doc. [10-1] at 3-4, ¶¶ 11-12 (Emphasis added).

Defendant argues even though Plaintiffs were non-signatories to the Agreement between Liebherr and Barnard, they directly benefitted from the Agreement's incorporated warranty by obtaining multiple repairs. Doc. [11] at 4. Liebherr contends Bracken, as a non-signatory, embraced the Agreement and is therefore bound by the contract under the doctrine of direct benefits estoppel, because it "knowingly s[ought] and obtain[ed] "direct benefits' from the contract." *Id.* (quoting *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 291 (5th Cir. 2015). And therefore, it argues Bracken is estopped from denying enforcement of the Agreement's Terms and Conditions, which include the forum-selection and choice of law clauses. *Id.* at 3-4. Further, Defendant contends the forum-selection clause is mandatory and enforceable here, because it was not unreasonable and "specifies that 'litigation *must* occur in Virginia.'" *Id.* at 4.

In support of its contention that this Court should apply direct benefits estoppel here, Defendant cites several Mississippi cases. It relies heavily upon *Nicholas Services, LLC v. Bombardier Inc.*, No. 3:23CV251 MPM-RP, 2023 U.S. Dist. LEXIS 229124 (N.D. Miss. Dec. 26, 2023). It claims this case and *Nicholas Services* have "highly similar" facts. Defendant summarizes the *Nicholas Services* facts as follows:

> [T]he resale purchaser of an aircraft "sought and obtained a very significant amount of free repairs and other benefits from [the manufacturer's] Warranty." *See id.* at *50. The resale purchaser was not the original purchaser of the aircraft, and, thus, was a non-signatory to the purchase agreement between the manufacturer and original purchaser, including the warranty. *See id.* at *3, *33. However, the warranty at issue in *Nicholas Services* expressly applied to subsequent purchasers "provided that any successor or owner shall remain subject to the applicable provisions of the Agreement to the same extent as the Buyer." *Id.* at *46–*47. The purchase agreement between the manufacturer and the original buyer also contained a clause providing for arbitration of "any dispute, controversy, or claim relating directly or indirectly to, or arising out of or in connection with this Agreement."3 *Id.* at *33.

5

> The resale purchaser filed suit against the manufacturer for breach of the manufacturer's warranty. *See id.* at *31. Although the plaintiff was a nonsignatory to the purchase agreement between the manufacturer and the original purchaser, the court found that the warranty and purchase agreement constituted the "same contract" based upon the provision in the warranty applying to subsequent purchasers "provided that any successor or owner shall remain subject to the applicable provisions of the Agreement to the same extent as the Buyer."
>
> . . .
>
> [T]he court found that no sophisticated business entity such as [the resale purchaser] could have believed that [the manufacturer] would have been willing to transfer its obligations under the Warranty to a subsequent purchaser unless it was also allowed to obtain the contractual benefits which it had negotiated for itself with the original purchaser, including the right to demand arbitration of any claims against it. . . . Therefore, the court held the resale purchaser was bound by the purchase agreement's arbitration clause under estoppel. *Id.* at *53.

Doc. [11] at 4-6.

Like *Nicholas Services*, Liebherr points to language from the Agreement, incorporating by reference the Standard Warranty and Terms and Conditions, which it relies on to bind Plaintiffs to the Agreement *Id.* at 6. Specifically, it argues the Terms and Conditions of the Agreement here applies to subsequent purchasers, as it expressly provides "this Agreement . . . shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns." *Id.* at 7 (quoting, Agreement, Exh. A. at 3, ¶ 9). Further, it points to additional language in the Standard Warranty, stating, "[t]he remedies under this warranty shall be the only remedies available to the owner of Liebherr products or any other person." *Id.* at 7, n. 4. And, it also notes that the Standard Warranty was extended to the "new product *end user*." *Id.* (Emphasis added).

Liebherr asserts Plaintiffs obtained multiple and extensive repairs to the crane under the warranty, and its argues they "are sophisticated commercial entities . . . that could not have reasonably 'believed that Liebherr would have been willing to transfer its obligations under the Standard Warranty to a subsequent purchaser unless it was also allowed to obtain the contractual

6

benefits which it had negotiated for itself with the original purchaser, including the right to demand' that all claims against it be litigated only in the courts of Virginia." *Id.* at 8 (quoting *Cf. Nicholas Servs., LLC*, 2023 U.S. Dist. LEXIS 229124, *52) (internal brackets omitted). Thus, Defendant contends Bracken knew of the Agreement and should be subject to the same obligations agreed upon by the original purchaser. *Id.* at 8.

In the Response in Opposition [13], Plaintiffs argue direct benefits estoppel is inapplicable here. Plaintiffs contend "Liebherr seeks to expand the application of the direct benefit estoppel beyond what it has been traditionally applied to in Mississippi courts." Doc. [14] at 2. While they concede the existence of the forum-selection clause in the Agreement between Liebherr and Barnard, Plaintiffs argue the clause is unenforceable against Bracken. In support of its opposition, Plaintiff's point to *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 291 (5th Cir. 2015) – a case also cited in support of Defendant's motion – stating "a third-party must either knowingly seek and obtain direct benefits from the contract or seek to enforce the terms of that contract or assert claims that must be determined by reference to the contract." *Id*. Bracken contends that applying direct benefits estoppel here would be a significant broadening of the doctrine's application and established law and that enforcing the subject sales agreement "would be unjust, dangerous [precedent]," as Liebherr has offered no evidence of Bracken's notice. *Id.* at 2, 5-6.

Bracken argues the knowledge requirement under the first approach of direct benefits estoppel is not met. It contends Bracken only learned of the Agreement after litigation began, and it therefore did not have actual knowledge of the contract containing the subject clause. *Id.* at 3. They aver Bracken was never in possession or aware of the terms of the Agreement between Liebherr and Barnard, as Barnard only provided Bracken with an invoice to document the sale of the crane. *Id.* at 4 (citing the Affidavit of Brent Beazley, Bracken's Equipment Manager, Doc. [13-

7

1], Exh. A at ¶¶ 6-7). Plaintiffs assert the invoice contains no reference to any sales agreement or warranty. *Id.* Thus, Bracken argues it is impossible for it "to have notice that their warranty claims may subject them to an agreement of which they had no knowledge." *Id.* at 4. Plaintiffs also contend that, without actual knowledge, the direct benefits estoppel does not apply. *Id.* at 5 (citing *Noble Drilling Servs., Inc. v. Certex USA, Inc.,* 620 F.3d 469, 471 (5th Cir. 2010) ("The court in *Noble Drilling Servs.*, stated '[t]o satisfy the knowledge requirement, the case law requires that the non-signatory have had actual knowledge of the contract containing the arbitration clause.'")

      Plaintiffs argue the primary case relied upon by Defendant, *Nicholas Services*, is in fact distinguishable from this matter. It contends the defendant in that case was careful to include language in its warranty that "made clear that a subsequent purchaser would benefit from the warranty, . . . with the explicit caveat . . . [that] "provided that any successor or owner shall remain subject to the applicable provisions of the Agreement to the same extent as the Buyer." *Id.* at 5 (quoting *Nicholas Servs., LLC*, 2023 WL 8888641 at * 6). Plaintiffs say the important distinction is that the plaintiff in *Nicholas Services* had notice of the agreement, and that the warranty was subject to the existing agreement. *Id.* Plaintiffs further argue no warranty was supplied to Bracken, and even though the Agreement and Standard Warranty were combined into a single document, it is impossible for the warranty claims submitted by Bracken to constitute a "knowing exploitation of [the Agreement's] terms." *Id.*

      Plaintiffs contend direct benefits estoppel under the second approach is also inapplicable, because they are not seeking to enforce the terms of the Agreement between Liebherr and Barnard and because they do not assert claims that must be determined by reference to the Agreement. *Id.* at 6 (citing *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d at 291). Rather, they argue they seek remedies under theories of negligence, implied warranties, and strict products liability, none of which

8

depend on the terms of a contract or the subject Agreement. *Id.* at 6. Plaintiffs asserts that they do not refer to the Agreement in their Complaint, and they are not attempting to enforce the terms of the Agreement. *Id.* (citing Complaint [1-1] at 1-11). And, Bracken adds, "if a non-signatory receives a copy of heretofore-unknown contract for the first time when it sues a signatory, that mid litigation revelation likely is not enough for knowing exploitation of the contract." *Id.* at 5 (quoting *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d at 292).

Finally, Plaintiffs urge this Court not to apply direct benefits estoppel, as they contend the doctrine has traditionally only been applied to arbitration agreements in Mississippi, not venue selection. *Id.* at 5, 7. And they point out that the two cases primarily relied upon by Defendant – *Nicholas Services, LLC*, and *In re Loyd's Register North America, Inc.* – applied the direct benefits estoppel in matters that involved enforcement of arbitration provisions. *Id.* at 7. They argue the Agreement at issue here does not involve an arbitration clause. *Id.* And they assert Mississippi case law "seems to narrowly apply the direct benefit estoppel to arbitration provisions[,]" and expanding the doctrine to apply to a forum-selection clause creates risks for "unwitting non-signatories." *Id.* Bracken requests that this Court refuse the application of direct benefits estoppel, as they contend it would be prejudicial, against the interests of the public at large, and against the interests of justice. *Id.*

In its Rebuttal [15], Defendant argues "actual knowledge" as asserted by Plaintiffs is not the standard. Doc. [15] at 4. Rather, "the question is whether [the non-signatory] had actual knowledge of the [contract] as a whole, not the . . . provision itself." *Id.* (Emphasis omitted). Thus, it maintains the non-signatory "merely needs to be 'aware' of the contract's existence before litigation begins." *Id.* Liebherr argues Bracken was clearly aware of the warranty (which was part of the same document as the Agreement), as it bought the crane new from Barnard and received

9

repairs under the warranty three times between August and December 2021. *Id.* at 5. Liebherr argues it is irrelevant whether Bracken ever had possession of the Agreement or even knew the terms and conditions. *Id.*

Defendant challenges Plaintiffs' reliance on *Noble Drilling* and *Nicholas Services*. It contends the decision in *Noble Drilling* does not support Plaintiffs' position here, because unlike this case, that court determined the plaintiff could not have knowledge because the agreements were created after the plaintiff entered into its own sales contract with the dealer. *Id.* at 5. (citing *Noble Drilling*, 620 F.3d at 471). Likewise, Defendant argues Plaintiffs misconstrue *Nicholas Services*. It offers that the "gist of *Nicholas Services* is that the purchase agreement and warranty document constituted the 'same contract' for purposes of binding the plaintiff to the purchase agreement's arbitration clause under direct benefits estoppel." *Id.* at 6. It says Plaintiffs' here mistakenly focus on whether the plaintiff in *Nicholas Services* possessed the warranty documents, yet that court made no such finding about possession or actual knowledge. *Id.* at 6-7. Defendant also challenges Plaintiffs' claim that direct benefits estoppel has not been applied to forum-selection clauses. *Id.* at 9. It points to several Fifth Circuit cases, arguing the doctrine has indeed been applied in this context. *Id.* at 9-10.

Finally, Defendant reasserts that it has established the alternative theory of direct benefits estoppel, because the Court cannot determine Plaintiffs' claims without referencing the Standard Warranty contained in the Agreement. *Id.* at 7-8. Defendant contends Plaintiffs reference the subject warranty in their Complaint. *Id.* at 8. It argues the basis of all of Plaintiffs' claims arise from the Standard Warranty and that, without it, the alleged events giving rise to Plaintiffs' damages could not exist. *Id.* at 8-9. And therefore, it reasserts that direct benefits estoppel binds Plaintiffs to the Agreement and the incorporated forum-selection clause. Defendant moves this

Court to find that direct benefits estoppel applies here, as they contend Plaintiffs benefitted from the repairs under the subject warranty. Thus, they urge the Court to enforce the forum-selection clause contained in the subject Agreement.

### B. Analysis

#### a. *Direct Benefits Estoppel*

The Court must first decide whether the forum-selection clause contained in the Agreement between Barnard and Defendant Liebherr is enforceable against Plaintiffs as non-signatories to the contract. "[A]s a general proposition, a forum-selection clause may be enforceable only by and against a party to the agreement containing the clause." *Ney v. 3i Grp. PLC*, No. 1:20-CV-1142-LY-ML, 2021 WL 8082411, at *9 (W.D. Tex. Apr. 13, 2021).[3] "Because forum-selection clauses are creatures of contract, the circumstances in which non-signatories can be bound to a forum-selection clause are rare." *Id. See also Auto Parts Mfg. Mississippi Inc. v. King Const. of Houston, LLC,* 74 F. Supp. 3d 744, 758 (N.D. Miss. 2014) (citation omitted). "That said, the Fifth Circuit has recognized the following theories for binding a non-signatory to a forum-selection clause: "(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary.[4]" *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003) (speaking in terms of an arbitration clause); *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 519 (5th Cir. 2006) (noting that an arbitration clause is a type of forum-selection clause).

"Direct-benefits estoppel holds a non-signatory to a clause in a contract if it 'knowingly

---

[3] *See Ney v. 3i Grp. PLC*, No. 1:20-CV-1142-LY-ML, 2021 WL 8082411, at *9 (W.D. Tex. Apr. 13, 2021), report and recommendation adopted, No. 1:20-CV-1142, 2021 WL 8082324 (W.D. Tex. Apr. 30, 2021), *aff'd sub nom. Ney v. 3i Grp., PLC*, No. 21-50431, 2023 WL 6121774 (5th Cir. Sept. 19, 2023).
[4] Of note, this Court does not apply the third-party beneficiary doctrine here, as it is inapplicable. The Fifth Circuit "has recognized [that] third-party beneficiary and direct-benefits estoppel are distinct doctrines." *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d at 293.

exploits the agreement' containing the clause." *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 291 (5th Cir. 2015) (quoting *Bridas,* 345 F.3d at 361–62)). The Fifth Circuit previously identified two specific ways in which a non-signatory can be bound under the theory of direct benefits estoppel. *Id.* at 291. "First, it may be bound by knowingly seeking and obtaining 'direct benefits' from that contract." *Id.* (quoting *Noble Drilling Servs., Inc. v. Certex USA, Inc.,* 620 F.3d 469, 473 (5th Cir.2010)). "Second, it may be bound 'by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract.'" *Id.*

Plaintiffs point out that courts have traditionally applied direct benefits estoppel in cases involving an arbitration clause. "The court notes that for enforceability purposes, there is no distinction between forum selection clauses and arbitration clauses." *Mortimer Fam. Funeral Home, LLC v. Johnson Consulting Grp.*, No. 4:19-CV-180-DMB-RP, 2020 WL 1817295, at *1 (N.D. Miss. Apr. 9, 2020) (citing *Haynesworth*, 121 F.3d 956, 963 (5th Cir. 1997); *Mitsui & Co. (USA) v. Mira M/V*, 111 F.3d 33, 36 (5th Cir. 1997). "Courts have applied direct benefits estoppel to bind a non-signatory to an arbitration agreement when the non-signatory knowingly exploits the contract containing the arbitration clause and obtains a direct benefit from that contract." *Noble Drilling*, 620 F.3d at 473 (citing *Hellenic Inv. Fund, Inc. v. Det Norske Veritas,* 464 F.3d 514, 517–18 (5th Cir.2006) ("Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract") (alteration in original)).

To satisfy the knowledge requirement under the first prong, the case law requires that the non-signatory have had actual knowledge of the contract containing the arbitration clause. *See id.* at *473 (citing *Hellenic,* 464 F.3d at 515–16, 519) (applying direct benefits estoppel to a non-signatory that knew of the contract to which it was later bound); *see also Deloitte Noraudit A/S v.*

*Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1064 (2d Cir.1993) (finding that a non-signatory was bound when it received a copy of the agreement containing an arbitration clause) (citation omitted)). Defendant's argument rest on the belief that Bracken's apparent implicit knowledge satisfies the knowledge requirement, but this Court disagrees. Although the Court believes it a reasonable assumption that Bracken generally surmised a contract of sorts existed between the seller and first purchaser, no evidence supports a conclusion that Bracken knew of the terms of any agreement, such that it had actual knowledge or "knowingly exploited" the Agreement. "[S]peculation is not evidence of actual knowledge." *Fuller v. Healthcare Servs. Grp., Inc.*, No. 2:18-CV-032-D, 2019 WL 244487, at *3 (N.D. Tex. Jan. 17, 2019). "A non-signatory must have specific knowledge of the relevant agreement – a non-signatory's generalized sense that two contracting parties have a course of dealing will not satisfy this requirement. *Id.* at *3.

It is unclear from the parties' briefing how the subject warranty was accessed and ultimately utilized by Bracken. And this Court makes no inferences on this issue but relies on the submissions of parties – Defendant submits a complete copy of the Agreement but no direct communication or documents executed by Bracken. While it is noted that repairs were obtained under the warranty, there is simply no evidence or supporting documentation from Liebherr to Bracken, or vice versa, showing that Plaintiffs recognized the alleged terms and conditions to which Liebherr seeks to bind them under the Agreement. Plaintiffs claim the only document they received was an invoice for the purchase of the subject crane. A review of the invoice reveals no reference to any other agreement, contract, or warranty. Bracken was not on notice of the subject Agreement.

As to the second prong – whether Bracken seeks to enforce certain terms of the subject agreement or has embraced the contract by bringing claims that can be determined only by

13

reference to contract – the Court conducts the following evaluation:

A plain reading of the allegations set forth in Plaintiffs' Complaint reveals that Bracken does not seek to enforce the terms of the Agreement between Liebherr and Barnard. Bracken expressly complains of these causes of action:

**Count 1: Strict Liability**

[33.]   Defendants assembled, manufactured, sold, marketed and distributed the Incident Crane which was expected by Defendants to reach the ultimate user, without substantial change in the condition of the components at the time the Incident Crane left Defendant's possession.
34.   At all times hereto, Defendants were in the business of assembling, manufacturing and selling the Liebherr Cranes identified above, including the one that catastrophically failed in the within action.
35.   At the time the Incident Crane was placed into the stream of commerce by Defendants it was in a defective condition unreasonably dangerous to the ultimate user.
. . .
39.   At the time of the fire, the Incident Crane had only received repairs and maintenance by Defendant Liebherr.
40. The Incident Crane failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm.

. . .

**Count II – Breach of Warranty**

[43.]   Defendants knew or had reason to know of the intended use of the Incident Crane and impliedly warranted[5], amongst other things, that the Incident Crane [sic] was fit for the intended use under the conditions for which it was being utilized.
44.   The Incident Crane was inadequate and unsafe for its intended and foreseeable use.
45.   Defendants breached the implied warranty of merchantability and fitness for a particular purpose[6] by selling the Incident Crane with defective and unreasonable dangerous parts which were likely to fail.

---

[5] By definition, implied warranty means "an obligation imposed by the law when there has been no representation or promise; esp. a warranty arising by operation of law because of the circumstances of a sale, rather than by the seller's express promise." Implied Warranty, Black's Law Dictionary, (12th Ed. 2024).

[6] Black's Law Dictionary defines implied warranty of fitness for a particular purpose as "a warranty-imposed by law if the seller has reason to know of the buyer's special purpose for the item – that the item is suitable for the purposes." *See* UCC § 2-315. Such warranty is subject to disclaimer only by a conspicuous writing. *See* UCC § 2-316(2). Implied Warranty of Merchantability and Fitness for a Particular Purpose, Black's Law Dictionary, (12th Ed. 2024).

> . . .
>
> **Count III – Negligent Repair**
>
> [48.]   Defendant Liebherr was responsible for all repairs and maintenance to the Incident Crane from the date of purchase to the date of the fire.
> 49.   At all times hereto, Defendant Liebherr was in the business of repairing and maintaining Liebherr Cranes identified above including the one that catastrophically failed in the within action.
> 50.   Defendant Liebherr was negligen[t] and careless in the repair and maintenance of the Incident Crane[.]
> . . .
> [51]   At the time of the fire, the Incident Crane had only received repairs and maintenance by Defendant Liebherr.

Excerpts from Complaint, Doc. [1-1] at 6-9.

Plaintiffs argue they did not learn of the purported Agreement until after litigation began. A review of the claims alleged in Plaintiffs' Complaint, which was first brought in state court against both Liebherr and Barnard, reveals that the Complaint advances no breach of contract claims. Plaintiffs allege breach of implied warranty but do not claim breach of contract or breach of an express warranty. As noted in *Noble Drilling*, "[a]s plaintiff, [Bracken] is not required to base its claims on the . . . Agreement and can, as it has, disclaim any reliance thereupon." 620 F.3d at *474-475. Bracken's claims arise out of allegations that Liebherr is responsible for the ultimate destruction to the subject crane, which Bracken asserts under other breaches of duties that it claims the seller/manufacturer owed by law. There is no evidence that Bracken embraced the Agreement despite their non-signatory status, and that they now, during litigation, attempt to repudiate the clauses within the Agreement. This Court thus concludes that the theory of direct benefits estoppel does not apply, and Bracken is not obligated to litigate its claims under the subject Agreement.

### b. *28 U.S.C. § 1404(a)*

This Court now turns to its analysis under Section 1404(a). "Section 1404(a) is 'just a codification of the [forum *non conveniens*] doctrine for the subset of cases in which the transferee

forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Tylertown Farm Supply, LLC v. ODES UTVS, LLC*, No. 2:16-CV-62-KS-MTP, 2016 WL 11668678, at *2 (S.D. Miss. July 28, 2016) (citation omitted). "Transfer under § 1404(a) is limited to those situations in which the district to which transfer is sought is one where the plaintiff could have entertained the suit originally." *Frazier*, 755 F. Supp. 163 (S.D.Miss.1991) (citation omitted). Thus, transfer may properly be made only when the court to which transfer is sought would have been a proper venue and would have had personal jurisdiction over all the defendants if it had been the original forum. *Frazier, v. Commercial Credit Equip. Corp.,* 755 F. *Supp*. at 165 (citation omitted). Here, no one disputes that this case might have been brought in the Newport News Division of the U.S. District Court for the Eastern District of Virginia, where Defendant has its principal place of business.

"Since federal jurisdiction in this case is founded solely on diversity of citizenship, the applicable venue statute is 28 U.S.C. § 1391(a):

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*Jimmie Lyles Carpets, Inc. v. Munlake Contractors, Inc.*, No. 5:11-CV-85 DCB JMR, 2012 WL 2222857, at *4–5 (S.D. Miss. June 14, 2012) (quoting 28 U.S.C. § 1391(a). "Subsection (c) further provides that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c)). *Id.* at *5.

This action was originally filed in the Circuit Court of Rankin County, Mississippi and

removed by Defendant to this Court on the basis of diversity jurisdiction. As previously provided, both Bracken Construction Company, Inc. and Bracken Equipment, LLC are incorporated in and have their principal places of business in Mississippi; Colony is incorporated in Ohio and has its principal place of business in Illinois; and Liebherr is incorporated in and has its principal place of business in Virginia. Notice of Removal, Doc. [1] at 2-3. Complete diversity exists among the parties, and because Liebherr is incorporated in Virginia, this action could indeed have been brought there.

The language of § 1404(a) requires a court to consider "the convenience of parties and witnesses" and "the interest of justice" in analyzing whether to transfer a case. As stated by the Fifth Circuit:

> The determination of "convenience" turns on a number of private and public interest factors, none of which are given dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Jimmie Lyles Carpets*, WL 2222857 at *5 (quoting *In re Volkswagen AG,* 371 F.3d at 203) (internal citations omitted).

Here, in their opposition in response to Defendant's Motion to transfer venue, Plaintiffs primarily focus on disclaiming the forum-selection clause and direct benefits estoppel. They reject transfer of venue but provide little to no argument under § 1404(a). On the other hand, Liebherr asserts the Court should transfer this case because it is in the interest of justice based on the forum-selection clause. Defendant also requests that this Court weigh only the public interest factors under §1404(a). Doc. [11] at 13. (Citation omitted). Defendant asserts none of the factors preclude

transfer of venue here.

Looking to the private factors, the Court first turns to the relative convenience of the witnesses that may be called by both Bracken and Liebherr. The Court finds that, while a trial in this forum may be somewhat more onerous for Defendant's witnesses simply because of a greater distance from their residence in and around Virginia, the burden on them is not significantly greater than what would be placed on Plaintiffs and their witnesses should the trial be conducted in this Court. *Id.* The location of witnesses and documents may make Mississippi a more convenient forum for Plaintiffs. Considering that the subject incident giving rise to this action occurred in Mississippi, it is highly likely that most of the witnesses will be Mississippi residents. Turning to the issue of compulsory process, the availability of compulsory process is unlikely if the case were transferred to Virginia, as there would be no subpoena power over the Mississippi residents. And the cost of attendance for willing witnesses to travel from Mississippi to Virginia would be significantly more compared to the cost of attendance for a trial in Mississippi. As it pertains to documents, the Court finds that the location of documents favors neither party, as one side or the other would have to transport documents in any event. As for evidence, if the remains of the subject crane have been preserved in Mississippi, then the current forum would be more convenient. At any rate, since neither party outlines their position on the private interest factors, this Court will not speculate about the location of what may be left of the crane. On the whole, the private factors weigh in favor of Plaintiffs.

As to the public interest factors, Defendant argues no factor favors Plaintiffs. Yet again, Defendant argues there is a strong presumption in favor of enforcing the mandatory forum-selection clause contained in the Agreement, which it asserts may be overcome only by a clear showing that the clause is unreasonable under the circumstances. *Id.* at 12 (citing *Haynesworth v.*

*The Corp.*, 121 F.3d 956, 962–63 (5th Cir. 1997). Defendant analyzes the *Haynesworth* factors and concludes the subject forum-selection clause is not unreasonable under the circumstances and is therefore enforceable. *Id.* It claims, "there was no fraud or fundamental unfairness, [that] no party will be deprived of its day in court, and enforcement [of the forum-selection clause] poses no contravention of Mississippi public policy." *Id.* To that end, Defendant argues the Court may weigh only the public interest factors under §1404(a). Defendant asserts none of the factors preclude transfer of venue here. *Id.*

The Court addresses the public interest factors. First, potential administrative difficulties are unknown and unforeseeable in either forum. For instance, neither party addresses the timeframe for setting a matter for trial in Virginia, but this Court notes that a matter would typically proceed to trial in the instant forum within 12-18 months of filing. As to Mississippi's interest in having this matter decided at home, Mississippi no doubt has a strong local interest in having the case litigated here, as it involves a Mississippi citizen and relates to events which occurred here. *Tylertown Farm Supply, LLC v. ODES UTVS, LLC*, No. 2:16-CV-62-KS-MTP, 2016 WL 11668678, at *5 (S.D. Miss. July 28, 2016) (citing *McFadin v. Gerber*, 587 F.3d 753, 763 (5th Cir. 2009)). There is no reason to believe that a Mississippi federal court would be unable to apply Virginia law (although this Court shall not speculate as to which law will govern the case). Finally, a transfer to Virginia may result in Plaintiffs losing their opportunity to try their case to a jury. If the Virginia court determines that the Agreement is binding on Plaintiffs, Plaintiffs could lose their opportunity for a jury trial, as the Agreement contains a provision for "waiver of jury trial." Agreement, Doc. [10-1] at 4. In their Complaint, Plaintiffs' demand a jury trial in Mississippi. Complaint, Doc. [1-1] at 9. On the whole, the public interest factors weigh in favor of Plaintiffs.

"When considering a motion to transfer pursuant to section 1404(a), the plaintiff's choice

of forum [was] generally 'highly esteemed' and entitled to great weight, particularly when his choice of forum is his own home state[.]" *Rippy v. Crescent Feed Commodities, Inc.*, 710 F. Supp. 1074, 1079 (S.D. Miss. 1988) (citations omitted). However, more recent case law acknowledges that "the forum in which Plaintiff chooses to file suit is . . . [merely] a factor that may be considered, but . . . is "neither conclusive nor determinative." *Granny's All. Holdings, Inc. v. Farrow Const. Specialities, Inc.*, No. 1:11CV165-HSO-JMR, 2012 WL 1836272, at *9 (S.D. Miss. May 21, 2012)(quoting *In re Horseshoe Entertainment,* 337 F.3d 429, 434 (5th Cir.2003)). The application of the private and public interest factors is most determinative here.

While neither forum is perfect for either party, a review of the submissions of the parties, consideration of the arguments, review of the record and relevant case law leads to this Court's conclusion that the Motion to Transfer Venue is not well taken. Transfer of venue pursuant to 28 U.S.C. § 1404(a) is at the discretion of the court. This Court, having considered and balanced all relevant factors, finds that litigation would more conveniently proceed, and the interests of justice be better served, by maintaining the action in the current forum.

**Conclusion**

IT IS, THEREFORE, ORDERED that Defendant *Liebherr-American, Inc.'s Motion to Transfer Venue* [10] is hereby DENIED.

**SO ORDERED** this the 14th day of February, 2025.

/s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE